```
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF MISSISSIPPI
                         JACKSON DIVISION
```

CORINNE BUFKIN                                              PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:08CV465TSL-JCS

THERMAGE, INC., EASTERN SHORE
PLASTIC SURGERY, P.C., WILLIAM
R. STAGGERS, M.D., AND JOHN DOES 1-10

<u>MEMORANDUM OPINION AND ORDER</u>

This cause is before the court on the motion of defendants Eastern Shore Plastic Surgery, P.C. and William R. Staggers, M.D., to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Corinne Bufkin has responded in opposition to the motion and the court, having considered the parties' memoranda of authorities, together with attachments, along with additional argument and evidence adduced at the court's hearing on the motion, concludes that the motion to dismiss should be granted.

Defendant William R. Staggers, M.D., is a physician licensed to practice medicine in the State of Alabama whose plastic surgery practice, Eastern Shore Plastic Surgery, is located in Fairhope, Alabama. Plaintiff Corrine Bufkin, a citizen of Mississippi, has brought this action seeking to recover damages for injuries she suffered from a "Thermage" procedure performed on her by Dr. Staggers. In their present motion, Dr. Staggers and Eastern Shore Plastic Surgery seek dismissal of plaintiff's claims against them

based on lack of personal jurisdiction.  In support of their motion, these defendants point out that Dr. Staggers is a resident of Alabama, that his sole locality for the practice of medicine is Fairhope, Alabama, that he has never been licensed to practice medicine in the State of Mississippi, that he owns no property in the State of Mississippi, and that he conducts no business in the State of Mississippi.  They maintain that they do not solicit business from Mississippi, and that while they have a an Internet website (and appear on a number of other websites), which provides information about the clinic and services performed by Dr. Staggers, the website is available worldwide, is informational only, and does not target Mississippi residents.  They contend, therefore, that they are entitled to be dismissed from this action.

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident.  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery."  Allred v. Moore & Peterson, 117 F.3d 278, 281 (5th Cir. 1997)(citations omitted).  When the court considers a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, "the plaintiff need only make a prima facie

case that jurisdiction is proper," Paz v. Brush Engineered Materials, Inc., 445 F.3d 809, 821 (5th Cir. 2006) (citing Quick Technologies, Inc. v. Sage Group, PLC, 313 F.3d 338, 343 (5th Cir. 2002)), unless the court conducts an evidentiary hearing on the jurisdiction issue, in which case the plaintiff has the burden to prove the grounds for personal jurisdiction by a preponderance of the evidence, Metropolitan Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir.), cert denied, 519 U.S. 1006 (1996). In this case, an evidentiary hearing was held.

The standard for establishing personal jurisdiction in diversity actions is well settled. A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under state law. Paz, 445 F.3d at 812 (citing Fielding v. Hubert Burda Media, Inc., 415 F.3d 419, 424 (5th Cir. 2005)). The court may only exercise jurisdiction if: "(1) the state's long-arm statute applies, as interpreted by the state's courts, and (2) if due process is satisfied under the 14th Amendment to the federal Constitution." Id. (citing Allred v. Moore & Peterson, 117 F.3d 278 (5th Cir. 1997)). "Because Mississippi's long-arm statute is not co-extensive with federal due process, this court must first analyze the scope of the reach of the statute itself." Bailey v. Zehr, 2001 WL 803757, 3 (5th Cir. 2001). The Mississippi long-arm statute allows a court to exercise personal jurisdiction over an out-of-state defendant who:

3

(1) makes a contract with a resident of this state to be performed in whole or in part by any party in this state; (2) commits a tort in whole or in part in this state against a resident or non-resident of this state; or (3) does any business or performs any character of work or service in this state. Miss. Code Ann. § 13-3-57.[1] If the long-arm statute is satisfied, the court must then consider whether the exercise of jurisdiction is consistent with due process.

"Exercising personal jurisdiction over a nonresident defendant is consistent with due process when (1) defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867 (5th Cir. 2001) (quoting Alpine View Co. Ltd. v.

---

[1] Mississippi's long-arm statute provides in relevant part that:
> Any nonresident ... corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

Miss. Code Ann. § 13-3-57.

4

Atlas Copco AB, 205 F.3d 208, 214 (5th Cir. 2000)). "'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." Id. at 867 (quoting Alpine View, 205 F.3d at 215). The difference is this:

> When a cause of action arises out of a defendant's purposeful contacts with the forum, minimum contacts are found to exist and the court may exercise its "specific" jurisdiction. A single, substantial act directed towards the forum can support specific jurisdiction. Where a cause of action does not arise out of a foreign defendant's purposeful contact with the forum, however, due process requires that the defendant have engaged in "continuous and systematic contacts" in the forum to support the exercise of "general" jurisdiction over the defendant.

Dalton v. R & W Marine, Inc., 897 F.2d at 1361-62 (5th Cir. 1990) (citations omitted).

In the case at bar, the basic facts, with emphasis on those arguably bearing on the parties' positions on this court's jurisdiction over defendants, are as follows. In 2006, after deciding she wanted cosmetic surgery to improve her appearance, Ms. Bufkin began searching on the Internet for plastic surgeons in the Southeastern United States. In her search, she found websites for Dr. Staggers and Eastern Shore Plastic Surgery. What initially caught her attention was the location of Dr. Staggers' practice in Fairhope, Alabama, because she had a sister who lived in Fairhope. Upon further review, she decided that Dr. Staggers appeared well credentialed, so she contacted his office for an

5

appointment. In her initial consultation appointment, Dr. Staggers and Ms. Bufkin discussed what she wanted and her surgical options, namely, liposuction, and shortly thereafter, Ms. Bufkin returned to Alabama to have the liposuction performed.

Following the initial procedure, Ms. Bufkin was generally satisfied with the overall results, but there were a few areas with which she was not satisfied; so, on her follow-up appointment with Dr. Staggers, the two discussed the possibility of Dr. Staggers doing "touch-up" liposuction in those areas. Later, on May 8, 2007, Ms. Bufkin telephoned Dr. Staggers' office and spoke with his patient coordinator, Denvia Potter, to inquire about scheduling an appointment to have further liposuction performed. At that time, Ms. Bufkin indicated to Ms. Potter that she would be in Colorado over the summer and wanted to have the surgery done when she returned in the fall.

Ms. Bufkin has testified that Ms. Potter told her that she could not schedule surgery that far in advance; and therefore, Ms. Bufkin decided she would look for a plastic surgeon in Colorado to perform the procedure. However, Ms. Potter explained in her testimony that while she did not schedule a definite date for the procedure when she spoke with Ms. Bufkin in May, she did "hold" or "block out" two of the dates Ms. Bufkin had mentioned for the surgery, October 23 and October 24. Subsequently, in August, Ms. Potter telephoned Ms. Bufkin to confirm and/or finalize

6

appointment dates.  By that time, the dates Ms. Potter had originally set aside were not convenient for Ms. Bufkin.  Accordingly, Ms. Potter rescheduled appointments for Ms. Bufkin in November, 2007.

Prior to the actual procedure, Ms. Bufkin returned to Dr. Staggers for a consultation in early November so they could discuss exactly what she wanted to have done.  It was at this appointment Dr. Staggers suggested the Thermage procedure to Ms. Bufkin.[2]  Ms. Bufkin again returned to Alabama on November 27 to have the procedures performed.  Plaintiff alleges in this cause that Dr. Staggers negligently used the Thermage equipment on a portion of her right leg, and that as a result of the malfunctioning of the Thermage equipment and/or the negligent or grossly negligent use of the equipment by Dr. Staggers, she suffered third degree burns on her right thigh which destroyed muscle and other tissue down to her femur.  She complains that although Dr. Staggers immediately recognized that she had sustained severe and unusual burns, he failed to treat her burns or even to disclose to her that she had been burned,[3] and instead

---

[2]  As explained by the parties, the Thermage procedure uses specialized equipment that heats and essentially melts subcutaneous fat layers, which cool to a smoother, tighter and more contoured appearance.

[3]  Ms. Bufkin alleges that under the effects of the anesthesia for the procedure itself, and being thereafter on pain medication from the procedure, she was not initially aware of the burn injury.

7

sent her home to Mississippi. She avers that at her follow-up appointment two weeks later, Dr. Staggers recognized the severity of her injury and yet still failed to treat the burns and instead, in an attempt to conceal the extent of the burns, wrapped them in gauze and sent her home to Mississippi. Plaintiff alleges that upon her return to Mississippi, she suffered extreme pain and severe emotional distress as her condition worsened and her right leg became useless, prompting her to seek medical attention from a local physician. Plaintiff alleges that she required surgery to repair the burns so that they could heal properly, and that in addition to the pain she suffered and continues to suffer, she now has scarring and partial loss of use of her leg.

Plaintiff submits that jurisdiction is proper over both the tort and doing-business prongs of Mississippi's long-arm statute. The general requirements for jurisdiction under the "doing business prong" of the Mississippi long-arm statute are that: "(1) the nonresident... must purposefully do some act or consummate a transaction in Mississippi, and (2) ... the assumption of jurisdiction by Mississippi must not offend traditional notions of fair play and substantial justice." Internet Doorway, Inc. v. Parks, 138 F. Supp. 2d 773, 775 (S.D. Miss. 2001) (citation omitted).

Plaintiff argues that defendants purposefully engaged in business in Mississippi, and established the requisite minimum

contacts with Mississippi for due process purposes, by soliciting Mississippi patients through an aggressive Internet marketing campaign, utilizing at least four separate websites, and further by soliciting her business in particular, by "regular telephone calls" following her initial plastic surgery in an effort to entice her to purchase the Thermage procedure at issue in this lawsuit.

Regarding their Internet presence, plaintiff points out that in addition to their own official Internet website, www.easternshoreplasticsurgery.com, defendants appeared on at least five other websites, for at least some of which defendants have paid a fee to appear so they can, in plaintiff's view, "aggressively entice potential customers to them so they can sell plastic surgery procedures."[4] Plaintiff further submits that in light of the geographic proximity of defendants' practice to Mississippi (being only forty-five miles from the Mississippi state line), it is obvious that defendants' Internet advertising is relevant to, and necessarily more targeted at Mississippi

---

[4] These include www.implantinfo.com, www.liposite.com, www.locateadoc.com, www.healthcarenearyou.com, and www.loveyourlook.com. Dr. Staggers testified that he did pay a fee for appearing on www.implantinfo.com but did not pay separately for www.liposite.com which he believed "tagged along" with the www.implantinfo.com site. He further explained that he did not pay to be included on www.healthcarenearyou.com or www.locateadoc.com and that these were sites that doctors "get stuck in" without any action on their part. He testified that he was not familiar with the www.loveyourlook.com site, and did not think he paid for advertising on that site.

9

residents, and she notes that one of the websites on which defendants appear, www.loveyourlook.com, includes Dr. Staggers in a directory of "Pascagoula surgeons," "Ocean Springs surgeons," and "Biloxi surgeons" (all Mississippi cities) whom prospective patients could contact for breast augmentation information.[5]

Having considered the parties' evidence, the court is of the opinion that the nature and extent of defendants' Internet activities do not support a conclusion that defendant was "doing business" in Mississippi or that these activities amount to minimum contacts that would support an exercise of personal jurisdiction by this court.

The Fifth Circuit uses a "sliding scale" in determining whether the operation of an Internet site's connections with a forum state provide the minimum contacts necessary for the exercise of personal jurisdiction.

> A "passive" website, one that merely allows the owner to post information on the internet, is at one end of the scale. It will not be sufficient to establish personal jurisdiction. At the other end are sites whose owners engage in repeated online contacts with forum residents over the internet, and in these cases personal jurisdiction may be proper. In between are those sites

---

[5] The website allowed viewers to search for a doctor in their area; upon indicating the city in which the viewer was interested, the site would identify doctors, with photographs and biographical information, and recite, for example,
> These Pascagoula surgeons can provide you with breast augmentation information and answer your questions about the size and type of your implants. A key step in getting the information you need is contacting one or more plastic surgeons in Pascagoula.

10

> with some interactive elements, through which a site
> allows for bilateral information exchange with its
> visitors. Here, we find more familiar terrain,
> requiring that we examine the extent of the
> interactivity and nature of the forum contacts.

Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002). Defendants' own website, www.easternshoreplasticsurgery.com, falls into the "in between" category but lies far nearer the passive end of the scale. Defendants' official website is informational only and though perhaps not strictly passive, is essentially so. In addition to providing general information about Dr. Staggers' qualifications and the types of services he performs, the site provides a phone number and email address at which the clinic can be contacted for additional information regarding services and procedures. However, the site also includes an online form that interested persons can use to request that information be sent to them regarding specific services, charges and financing. To the extent that the inclusion of this form could be said to render the site interactive, in the court's view, it would be merely technically. Doing nothing more than providing a means by which a potential client can request information through the website is no different in substance than providing a phone number or email address. The form does not amount to an "exchange" of information through the website. See Arriaga v. Imperial Palace, Inc., 252 F. Supp. 2d 380, 386 (S.D. Tex. 2003) (rejecting jurisdiction sought to be premised on defendant's Internet website, explaining: "Even

11

a website that is interactive requires initiation by the user. [Defendant's] website is accessible nationwide but requires an affirmative action by those accessing it. [Defendant] takes no deliberate action in Texas: it simply makes its website available nationwide. Further, the patron makes a reservation on [defendant's] website, services are not provided and payment is not made until the person reaches Nevada"). Defendants do not contact prospective patients through their website, but require initial contact be made by said prospective patients. Moreover, services are not provided and payment is not made until the patient reaches the defendants' place of business in Alabama.

Furthermore, regardless of whether plaintiff's characterization of defendants' official website and presence on other websites as "an aggressive internet advertising campaign," the evidence does not show that defendants' advertising was directed toward Mississippi residents. While the [www.loveyourlook.com](www.loveyourlook.com) site purported to include Dr. Staggers as a physician in or near various towns on the Mississippi Gulf Coast, the location of his practice was shown as Alabama, but more importantly, Dr. Staggers credibly testified that he was not personally familiar with or responsible for the content of the website and the website was instead maintained by the manufacturer of breast implants. Other than that single website that mentions Mississippi, plaintiff has identified only defendants'

12

geographical proximity to Mississippi as a basis for finding that their advertising targets Mississippi residents; but proximity alone does not amount to actual purposeful solicitation of business from Mississippi clients. Cf. Kekko v. K & B Louisiana Corp., 716 So. 2d 682, 683 (Miss. Ct. App. 1998) (no proof that non-resident was "doing business" in or had minimum contacts with Mississippi where there was no evidence that advertising on New Orleans television stations or in the New Orleans Times Picayune newspaper was specifically directed at Mississippi residents).

As an additional or alternative basis for finding that defendants were doing business in Mississippi, plaintiff argues that after her initial surgery, Dr. Staggers' office repeatedly contacted her by phone to encourage her to have more procedures performed, and in this manner, reached out to her in Mississippi to solicit her business. She claims that this fact, among others, supports an exercise of jurisdiction over Dr. Staggers and Eastern Shore. However, the facts, as testified to by plaintiff herself, do not support her position. It is clear from the testimony at the hearing that following the initial liposuction procedure, Ms. Bufkin made the decision to have additional surgery and contacted Dr. Staggers' office in an effort to schedule the procedure. In the court's opinion, the fact that Dr. Staggers' office later contacted Ms. Bufkin regarding scheduling of the procedure does not support jurisdiction, as it is clear that this contact was in response to Ms. Bufkin's earlier request for additional surgery. Such contacts will not support an exercise of jurisdiction. See

13

Bradley v. Mayo Foundation, No. CIV.A. 97-204, 1999 WL 1032806, 8 (E.D. Ky. 1999) (where plaintiff had unilaterally contacted Mayo Clinic to schedule initial and subsequent appointments, Mayo Clinic's subsequent calls to plaintiff in forum to schedule and confirm medical appointments in Minnesota were incidental to the treatment in Minnesota and did not constitute the transaction of business in Kentucky); Rogers v. Furlow, 699 F. Supp. 672, 675 (N.D. Ill. 1988)(confirmation letters from Mayo Clinic relating to appointment times did not constitute tortious act, continuum of tortious activity, transacting business, or otherwise subject defendant to specific jurisdiction in Illinois).

The gist of plaintiff's argument based on the tort prong of the long-arm statute is this: that upon Dr. Staggers' realization of the fact and extent of her injuries from the Thermage procedure, the applicable standard of care required that he provide Ms. Bufkin with appropriate treatment for her injuries or at the very least, if he intended to send her home or to allow her to return home to Mississippi without treatment, that he disclose to her the nature, extent and severity of her injuries so that she would be aware of the need to seek timely medical attention and treatment upon her return home; that by violating his duty to her in this regard, Dr. Staggers, in effect, negligently and/or recklessly caused and/or allowed her condition to deteriorate and in this manner caused Ms. Bufkin to sustain harm in Mississippi.

"Under the tort prong of the Mississippi long-arm statute, personal jurisdiction is proper if any element of the tort (or any

14

part of any element) takes place in Mississippi." Allred v. Moore & Peterson, 117 F.3d 278, 282 (5th Cir. 1997). In determining whether a tort is committed in Mississippi, the Mississippi Supreme Court has held that "[t]he tort is not complete until the injury occurs, and if the injury occurs in this State then, under the ... statute, the tort is committed, at least in part, in this State, and personam jurisdiction of the nonresident tort feasor is conferred upon the Mississippi court." Smith v. Temco, 252 So. 2d 212, 216 (Miss. 1971). The Fifth Circuit has been "careful to distinguish actual injury from its resultant consequences." Allred, 117 F.3d at 282.

> "[C]onsequences stemming from the actual tort injury do not confer personal jurisdiction at the site or sites where such consequences happen to occur." Jobe, 87 F.3d at 753 & n.2 (observing that "[t]he term 'injury' commonly denotes the invasion of any legally protected interest of another" whereas "the term 'damage' is understood to mean the harm, detriment or loss sustained by reason of an injury"); see also Cycles, 889 F.2d at 619 ("We have held that with respect to Mississippi's long-arm statute a tort occurs where and when the actual injury takes place, not at the place of the economic consequences of the injury."); Rittenhouse, 832 F.2d at 1384 (same); Estate of Portnoy v. Cessna Aircraft Co., 730 F.2d 286, 290 (5th Cir. 1984) (same).

Id. The line between what constitutes actual injury and what are mere consequences of an injury can at times be difficult to locate precisely. In this case, however, even if Dr. Staggers' alleged failure to provide treatment for Ms. Bufkin's injuries and concealment of the fact and extent of her burns could be found to fall on the injury side of the line so that the long-arm statute is satisfied, in the court's opinion, there still would be no basis for exercising jurisdiction because the requirements of due

15

process are not satisfied.  Plaintiff's allegation is that when he realized she had suffered the burns, Dr. Staggers had a duty to treat her or inform her of the fact and severity of the burns.  This alleged failure to act does not involve any contact by Dr. Staggers or Eastern Shore with Mississippi.  Cf. Chlebda v. H.E. Fortna and Brother, Inc., 609 F.2d 1022 (1st Cir. 1979) (finding no jurisdiction over forklift manufacturer for failure to warn of product defect, and observing that while due process requires that the defendant have conducted activities within the forum state, "[t]he whole thrust of plaintiff's claim is that there was no contact at all.  ... [T]he very complaint is that defendant did nothing."); Lincoln v Seawright, 104 Wis 2d 4, 310 N.W.2d 596 (1981) (in lawsuit to recover for injuries from dog bite, allegation that non-resident donor of dog failed to inform donee that dog had previously bitten another person was not a contact with the forum state that would allow assertion of jurisdiction).

In this case, Ms. Bufkin chose to travel out of state to have the procedures performed without being solicited to do so.  As one court has observed, when a patient travels to another state to receive professional services without having been solicited, then she "ought to expect that [s]he will have to travel again if [s]he thereafter complains that the services sought by [her] in the foreign jurisdiction were therein rendered improperly."  Woodward v. Keenan, 79 Mich. App. 543, 261 N.W.2d 80 (Mich. App. 1977) (citations omitted).  Based on the foregoing, therefore, it is

16

ordered that the motion of Dr. Staggers and Eastern Shore Plastic Surgery Associates to dismiss is granted.

SO ORDERED this 16th day of January, 2009.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE